**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DON COLEMAN ADVERTISING, INC.,
d/b/a GLOBALHUE,

    Plaintiff,

v.

ENRIQUE TUREGANO,

    Defendant.

_____/

Case No. 05-CV-73421-DT

HONORABLE DENISE PAGE HOOD

**ORDER DENYING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
and
NOTICE OF HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**I.    BACKGROUND/FACTS**

This matter is before the Court on Plaintiff Don Coleman Advertising, Inc. d/b/a GlobalHue's Motion for a Temporary Restraining Order seeking to enjoin Defendant Enrique Turegano from: disclosing any Confidential Information belonging to or originating from Global Hue; soliciting and performing any advertising related services for GlobalHue's customers and/or prospective customers; destroying, altering, modifying any data relevant to this action or GlobalHue's Confidential Information stored on any computer media; and seeking the return of documents derived from GlobalHue's Confidential Information materials.

Plaintiff is in the business of creating and selling advertising to its clients, including marketing for Hispanic and other minority markets. (Comp., ¶ 8) Defendant was employed by Plaintiff from September 8, 2003 until July 19, 2005, as a Field Account Director of the DaimlerChrysler account. (Comp., ¶ 9) Defendant was responsible for directly managing Plaintiff's

multicultural marketing staff, for developing and implementing sales and advertising strategies and budget recommendations, and for direct interaction with one of the Plaintiff's most valuable customers, both locally in the State of California area through dealerships and nationally through interaction with DaimlerChrysler's headquarters in Michigan. (Comp., ¶ 9) Plaintiff claims that it has developed highly confidential information materials concerning its business operations, including current customers and their purchases, budgets, strategies, business prospects, marketing research techniques and results, media plans, layouts, storyboards, scripts, and business plans. (Comp., ¶ 11)

Plaintiff claims Defendant has started a new company, Bumpercar, as a direct competitor of Plaintiff. (Comp., ¶ 10) As a condition of his employment, Defendant was required to enter into a Confidentiality and Non-Solicitation Agreement. (Comp., ¶ 13) Defendant was provided access to Plaintiff's Confidential Information during his employment and was allowed to use Plaintiff's computer system, for the sole purpose of performing his job duties. (Comp., ¶¶ 14-15) Defendant was provided with direct access to Plaintiff's relationship with key DaimlerChrysler employees to service Plaintiff's DaimlerChrysler accounts. (Comp., ¶ 16)

After Defendant's termination on July 19, 2005, Plaintiff learned that Defendant was actively soliciting Daimler Chrysler in Michigan for its advertising and marketing business targeted at the Hispanic niche market, including but not limited to sending a solicitation regarding his new business and seeking to obtain the Hispanic market of the DaimlerChrysler business. (Comp., ¶ 19) Plaintiff reviewed the computer Defendant was using during his employment and found that Defendant, along with a DaimlerChrysler employee, Patricia Romero, and two other persons, Eduardo Cortes and Andres Gomez, formed Bumpercar, while Defendant was employed with Plaintiff. (Comp., ¶ 20)

Plaintiff's counsel sent a cease and desist letter to Defendant on August 18, 2005.  Plaintiff claims Defendant continues to solicit Plaintiff's customers, including DaimlerChrysler dealerships in California and DaimlerChrysler headquarters in Michigan.  (Comp., ¶ 24)

On September 6, 2005, Plaintiff filed a Verified Complaint against Defendant alleging: Breach of Contract–Non Solicitation Provision (Count I); Breach of Confidentiality Agreement and Violations of Michigan's Uniform Trade Secrets Act (Count II); Breach of Fiduciary Duties (Count III); Unfair Competition (Count IV); and Conversion (Count V).  Plaintiff also filed the instant Motion for Temporary Restraining Order and Preliminary Injunction.

**II.   ANALYSIS**

   **A.   Temporary Restraining Order Standard**

Plaintiff claims it would be irreparably harmed if a temporary restraining order is not entered in this matter restraining Defendant from disclosing Confidential Information belonging to Plaintiff and from soliciting Plaintiff's clients.

Rule 65(b) of the Federal Rule of Civil Procedures, which provides for a temporary restraining order, states in pertinent part as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. ...

Fed.R.Civ.P. 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request.  1966 Advisory Committee Note to

65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08.

It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. *Id.* at 512. The loss of fair competition that results from the breach of a non-competition covenant is also likely to irreparably harm an employer. *Id.*

      **B.**      **Breach of Contract Claim–Non-Competition and Confidential Information, Michigan's Uniform Trade Secrets Act, and Common Law Duty**

Plaintiff claims it is entitled to a temporary restraining order because Defendant has breached the Non-Competition and Confidential Information provisions of the Agreement signed by Defendant.

In this case, Plaintiff has submitted a copy of the Agreement signed by Defendant wherein Defendant agreed not to solicit and not to perform any services relating to advertising for any of Plaintiff's clients during and for a period of nine months after the employment has been terminated. (Ex. 1, Agreement, p. 2) Specifically, the Agreement states,

4

> I agree that, in consideration of my being employed by the Company, *during the term of my employment and for a period of nine months subsequent thereto* (hereafter, the "Non-Solicitation Period"), I will not, directly or indirectly, either on my own behalf or on behalf of any other person, firm or corporation, solicit any account *that is a client of the business unit or units of the Company by which I am employed* (the "Business Unit") at the time of my termination of employment or that was a client of the Business Unit at any time within one year prior to the date of employment. I further agree that I will not perform any services relating to advertising, marketing, research, public relations or related services for any such account or business.

(Ex. 1, Agreement, p. 2)(italics added).

The Confidentiality clause states,

> I agree that I shall maintain all my ideas and all other information concerning the business of the Company, its clients and prospective clients (collectively, "Confidential Information") in strictest confidence both during and at all times following my employment with the Company. I will not at any time during my employment or after my employment with the Company ends, for any or no reason, except as directed or permitted by the Company in writing, disclose or take any action or inaction which could result in disclosure to any person, firm, corporation or other entity of any Confidential Information, or in any way directly or indirectly utilize Confidential Information for any purpose, including without limitation for my own benefit or the benefit of other. Confidential Information includes, without limitation, business prospects, computer software, research techniques, research results, media plans, layouts, storyboards, scripts, reports and information regarding the Company's or its actual prospective clients' advertising, marketing and sales promotion products, services and strategies, and any other information deemed confidential in the Non-Public and Confidential Information provision of the Company's Employee Manual, which I have received, whether imparted to me by the Company or its clients or prospective clients or obtained by me as part of this relationship, and whether or not marked confidential or proprietary. Notwithstanding the foregoing, information shall not be deemed Confidential Information under this Agreement if it has lawfully become publicly known outside of the Company through appropriate means, and other than through the act or omission of any person that has had an obligation of non-disclosure or non-use with respect to such

information.

(Ex. 1, Agreement, pp. 1-2)

Based on a review of the Agreement alleged to be signed by Defendant, the Verified Complaint, and the exhibits attached to the Complaint and the Brief in Support, the Court finds that Plaintiff has not shown that Defendant has solicited Plaintiff's clients, specifically, DaimlerChrysler. Exhibits 3 and 7 of the Verified Complaint (Exhibits 3 and 5 to the Brief) do not show that these alleged solicitation e-mails were specifically targeted to DaimlerChrysler or any of its dealerships in California. As to Exhibit 5 of the Verified Complaint (Exhibit 3 to the Brief), this e-mail appears to have been sent to "PCR11@daimlerchrysler.com." However, this e-mail is dated July 19, 2005, the last date Plaintiff was employed with Plaintiff. There is no indication from this e-mail that Defendant was soliciting business from DaimlerChrysler on behalf of his new company, Bumpercar, Inc. The e-mail shows that it was sent by Defendant from "GlobalHue, DaimlerChrysler WBC."[1]

As to disclosing Confidential Information under the Agreement, under Michigan's Uniform Trade Secrets Act, and under common law duty of an employee, Plaintiff generally alleges that Defendant has disclosed Confidential Information and trade secrets, without specifically stating which Confidential Information has been disclosed. Plaintiff submitted Exhibit 4 to the Verified Complaint (Exhibit 2 to the Brief), entitled "The Biz Plan," dated June 21, 2005 which Plaintiff claims was found in the computer used by Defendant. However, there is no indication which information in this document is confidential or a trade secret owned by Plaintiff. There is no

---

[1] Exhibit 4 to the Verified Complaint (Exhibit 2 to the Brief) is a document entitled "The Biz Plan" which Plaintiff claims it found in the lap top computer used by Defendant. The initials "D CX CA DAA" appear under the Business Source, Immediate Pitches heading of the document. It is not clear what these initials refer to (CA appears in Exhibit 5 of the Verified Complaint and Exhibit 3 of the brief) and there is no indication that any of these initials refer to the Plaintiff's current clients.

6

indication whether any confidential information or trade secret contained in "The Biz Plan" was disclosed to third parties.

Based on the above, Plaintiff has not shown that it may likely succeed on the merits based on the Verified Complaint and the exhibits attached thereto.

### C. Irreparable Injury

The Court recognizes that if an injury is not fully compensable by monetary damages, such as loss of customer goodwill and loss of fair competition from the breach of a noncompetition covenant, a plaintiff may be entitled to injunctive relief. *See, Basicomputer*, 973 F.2d at 511-512. However, because Plaintiff has not shown that Defendant has disclosed Confidential Information or trade secrets, or that Defendant has solicited Plaintiff's clients, for the purposes of the Motion for Temporary Restraining Order, Plaintiff has not shown that it has suffered irreparable injury.

### D. Notice

Plaintiff has indicated in its brief that a copy o f the Complaint, the motion and brief, has been sent to Defendant's counsel. Plaintiff's counsel, however, has not certified to the court, in writing, the efforts, if any, which have been made to give the notice to Defendant and the reasons why notice should not be required pursuant to Rule 65(b).

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Temporary Restraining Order (**Docket No. 2, filed September 6, 2005**) is DENIED.

IT IS FURTHER ORDERED that Plaintiff serve Defendant a copy of the Complaint, Plaintiffs' Motion for Preliminary Injunction and Brief, and this Order, by **Monday, September 12,**

**2005.** Defendant's response to the Motion for Preliminary Injunction must be filed with the Clerk's Office and served by **Wednesday, September 21, 2005.** Any reply to the response must be filed with the Clerk's Office and served by **Wednesday, September 28, 2005.**

IT IS FURTHER ORDERED that a **hearing on Plaintiffs' Motion for Preliminary Injunction is scheduled for Thursday, October 6, 2005, 2:30 p.m.**

       /s/ DENISE PAGE HOOD
       DENISE PAGE HOOD
       United States District Judge

DATED:   September 7, 2005


cc:    James E. Roach
       (Attorney for Plaintiff)